# United State Bankruptcy Court
# Southern District of Florida

In re: **KENEL CAZEAU and**          **Case Number:**      **11-31153-JKO**
       **BERNADETTE CAZEAU**          **Chapter 11**

                       **Debtors.**

_____/

# DEBTORS' CHAPTER 11 PLAN

## June 24, 2013

John J. Anastasio, Esq.
Suite 203
3601 South East Ocean Boulevard
Stuart, Florida 34996
Florida Bar #0722367
Attorney for the debtors
Phone:      (772) 286-3336
Facsimile:   (772) 286-1036
Email:      john@psllaw.net

# INTRODUCTION

Kenel Cazeau and Bernadette Cazeau ("Debtors"), Debtor-in-Possession, through the submit to their creditors, as proponent, this Plan of Reorganization (the "Plan") pursuant to Section 1121. *et seq.*. of the United States Bankruptcy Code, 11 U.S.C. (the "Code").


A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel.  The parties in interest should not rely on any representations not contained in the Plan or  Disclosure Statement in making a determination in voting on the Plan.  A detailed discussion of the voting  rights  of creditors is contained in the Disclosure Statement.

# ARTICLE I-DEFINITIONS

1.1     "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2     "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3     "Allowed Claim" means a Claim against the Debtor(s) (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been  allowed  by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall  not include un-matured or post-petition interest unless otherwise stated in the Plan.

1.4     "Assets" means all property, real or personal, in which the Debtor(s) as/have an interest.

1.5     "Avoidance Actions" means proceedings commenced under Chapter 5 of the

1

Bankruptcy Code.

1.6     "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7     "Bankruptcy Code" means Title 11 of the United States Code.

1.8     "Bankruptcy Court" means the United States Bankruptcy Court for the the Southern District of Florida, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9     "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10     "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor.

1.11     "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Florida are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12     "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court for the Southern District of Florida, and bearing Case No. 11-31153.

1.13     "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14     "Claim" means a claim as defined in § 101(5) of the Code.

1.15     "Claimant" means a Person holding a Claim against the Debtor(s).

1.16     "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

2

1.17    "Collateral" means any property or interest in property of the Debtor(s) subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18    "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19    "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20    "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22    "Creditor" means the holder of a Claim.

1.23    "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24    "Debtor" means Kenel Cazeau or Benedette Cazeau.

1.25    "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26    "Disputed Claim" means a Claim:

      (a)    which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or which is listed as disputed under any provision of this Plan, or

      (b)    as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27    "Effective Date" means the first Business Day after the Confirmation Order becomes a Final Order.

1.28    "Equipment" means all machinery, tools, motor vehicles, furniture and

fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29    "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30    "Estate" means the bankruptcy estate(s) of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31    "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor(s) was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32    "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33    "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34    "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35    "Lien" has the meaning set forth in §101(37) of the Code.

1.36    A "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 21 calendar days after the date of

4

service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.37    "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.38    "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.39    "Petition Date" means July 28, 2011, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.40    "Plan" means this Plan, as it may be amended from time to time.

1.41    "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.42    "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.43    "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.44    "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.45    "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.46    "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.47    "Schedules" means the schedules of assets and liabilities and statement of

financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.48    "Secured Claim" means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506 (a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor (s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.49    "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.50    "Unliguidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.51    "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II-CLASSIFICATION OF CLAIMS AND INTERESTS

**Class 1        Allowed Secured Claim of Fifth Third Bank on
                Retained Debtors' Residence**

Class 1 consists of the allowed secured claim of Fifth Third Bank's mortgage on Debtor's residence in the amount of $950,153.10. This is a 30-year adjustable rate mortgage. The principal, term, and current interest of the mortgage shall remain unmodified. The only change under the plan is that the current adjustable interest **rate of 3.13% shall remain fixed during the life of the plan**. The loan shall revert to contract adjustable rate after the 60-month life of the plan. The loan has been current. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**. The property is 100% secured. There is no unsecured claim.

6

| | | | |
|---|---|---|---|
| Property location: | 1) | **1124 NW 116th Avenue** | **(Claim #1)** |
| | | **Plantation, Florida** | |

## Class 2 Allowed Secured Claim of MidFirst Bank on <u>Retained</u> Rental Property

Class 2 consists of the allowed secured claim on the two retained rental properties in Asbury Park, New Jersey with MidFirst Bank. The principal, interest and term of the mortgage shall remain unmodified. The loan is current. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is not impaired**. The properties are 100% secured. There are no unsecured claims.

| | | | |
|---|---|---|---|
| Property locations: | 1) | **1116 Asbury Avenue** | **(Claim # 4)** |
| | | **Asbury Park, New Jersey** | |
| | 2) | **1118 Asbury Avenue** | **(Claim # 5)** |
| | | **Asbury Park, New Jersey** | |

## Class 3 Allowed Secured Claim of Bank of America on <u>Retained</u> Rental Property

Class 3 consists of the allowed secured claim on the retained rental property in Davie, Florida with Bank of America. The principal, term, and current interest of the mortgage shall remain unmodified. The only change under the plan is that the current adjustable interest rate of 3.13% shall remain fixed throughout the remaining life of the loan.. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**. The property is 100% secured. There is no unsecured claim.

| | | | |
|---|---|---|---|
| Property location: | 1) | **230 South Pine Island Road** | **(Claim # 8)** |
| | | **Davie, Florida** | |

## Class 4 Allowed Secured Claim of Wells Fargo Bank on <u>Surrendered</u> Rental Property

Class 4 consists of the allowed secured claim on the retained rental property in Cooper City, Florida with Wells Fargo Bank. This property shall be surrendered

7

in full satisfaction of the mortgage. This proof of claim was **withdrawn** in exchange for surrender under an agreed order. [Doc 255] Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**. The value was by way of an agreed order. [DE 255]. There is no unsecured claim.

Property location:          1)     **8950 NW 38th Street                    (Claim # 9)**
                                         **Cooper City, Florida**

**Class 5**              **Allowed Unfiled Secured Claim of Deutche Bank, Trustee**
                             **(formerly Bank of America) on**
                             **<u>Surrendered</u> Rental Property**

Class 5 consists of the unfiled secured claim on the rental property in Eatontown, New Jersey with Deutche Bank (formerly Bank of America. This property shall be surrendered, in full satisfaction of the mortgage. The value was by way of an agreed order. [DE 260]. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**. There is no unsecured claim.

Property location:              1)     **9 Carmel Way                        (Unfiled claim)**
                                             **Eatontown, New Jersey**

**Class 6      Allowed Secured Claim of Wauchula State Bank on**
                  **<u>Surrendered</u> Vacant Property**

Class 6 consists of the over secured claim on the vacant land in Fort Pierce, Florida. An agreed order establishing the value at $135,590.00 was entered. This exceeds the claim value of $131,045.97. Debtors will surrender the property to the lender in full satisfaction of this claim. The value was by way of an agreed order. [DE 264]. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**..

Property location:          1)     **Bluefield Dairy Road              (Claim # 11)**
                                         **Fort Pierce, Florida**

**Class 7      Allowed Unsecured Claim of Seacoast National Bank on**
                  **<u>Surrendered</u> Property**

Class 7 consists of the allowed unsecured claim on the surrendered vacant

land parcels in Port Saint Lucie, Florida with Seacoast National Bank  Any claim excess of the secured claim in class 7 shall be an unsecured claim, paid on the balance of the principal after subtracting the market value, over the 60 month life of the plan as a class 7 claim, at a rate of $3,000.00 per month.  Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired.**

| Property location: | 1) | **128 S.W Hawthorne Circle** | **(Claim # 2)** |
| | | **Port Saint Lucie, Florida** | |
| | 2) | **Schumann Road** | **(Claim # 3)** |
| | | **Port Saint Lucie, Florida** | |

**Class 8        Allowed Unsecured Claim of General Insurance on
                Settlement Agreement**

Class 8 consists of the allowed unsecured claim of General Insurance.  The settlement agreement provides for monthly payment of $1,111.00 per month paid on the claim.  This claim involved a counterclaim in connection with provider personal injury protection claims brought by the debtor, which was settled due to the costs of continuing the litigation.  The debtor under the Plan has and shall continue to pay in full according to this agreement.  Pursuant to 11 U.S.C. § 1129(15), this claim shall be paid not less than the amount stated of the filed Claim # 10 in the amount of $201, 483.56.  This claim is non-dischargeable under an order and agreement between the parties.  This class is not impaired.

**(Claim# 10)**

**Class 9        Unsecured Claim of Chase Bank**

This claim for pre-petition credit card charges and shall be paid over the 60-month life of the plan.  Pursuant to 11 U.S.C. § 1129(15), this claim shall be paid not less than the amount stated of the filed Claim # 6 in the amount of $1,252.60.

**(Claim # 6)**

## ARTICLE III-TREATMENT OF CLAIMS AND INTERESTS

3.1      Administrative Expenses (Unclassified): Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a

9

different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

3.2     The total unpaid professional fees as of the date of this Plan are estimated to be $40,000.00. The Debtor is unaware of any other unpaid administrative expense claims.

3.3     Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the Effective Date, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930{a)(6).

3.4     Priorty Taxes.      The Claim of the IRS has been withdrawn.

3.5     Treatment of filed claims shall be as follows:

| Class | Description | Claim # | Distribution |
|-------|-------------|---------|--------------|
| Class 1 | Allowed Secured Claim of **Fifth Third Bank** | 1 | **Retain** and pay claim in full at 3.13% interest during plan and revert to ARM for balance of loan. |
| Class 2 | Allowed Secured Claims of **MidFirst Bank** | 4,5 | **Retain** and pay claims as agreed in notes. |
| Class 3 | Allowed Secured Claim of **Bank of America** | 8 | **Retain** and pay claim in full at 3.13% interest for balance of loan. |
| Class 4 | Allowed Secured Claim of **Wells Fargo Bank** | 9 (Withdrawn) | **Surrender** as full claim satisfaction. |
| Class 5 | Allowed Secured Claim of **Deutche Bank** | 6 | **Surrender** as full claim satisfaction. |
| Class 6 | Allowed Secured Claim of **Wauchula State Bank** | 11 | **Surrender** as full claim satisfaction. |
| Class 7 | Allowed Unsecured Claims of **Seacoast National Bank** | 2, 3 | **Surrender** and pay $3,000.00 monthly |

10

| | | | over 60-month life of plan |
|---|---|---|---|
| Class 8 | Allowed Unsecured Claim of **General Insurance** | 10 | Pay claim in full at $1,100.00 per month. |
| Class 9 | Unsecured Claim of **Chase Bank** | 6 | Pay $1,252.60 over 60-month life of plan. |

3.6    All other claims above are made at the present contract terms except for Class 1.

3.7    Class 1 has the present adjustable rate mortgage interest rate of 3.25% fixed for the life of the loan.

## ARTICLE IV-EXECUTION OF PLAN

4.1    The Debtor shall fund this Plan from income from receivables paid to the debtors' Chiropractic practice, d/b/a Ace Chiropractic, and from rents from real estate.

4.2    The Debtor shall retain the Assets of the estate, not indiucated as surrendered above, and shall pay ordinary living expenses, pay the operating expenses for the real estate, and pay the creditors the amounts set forth in this Plan.

4.3    Consistent with the provisions of this Plan and subject to any releases provided for, the Debtor reserves their right to begin or continue any hearings on objections or adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction.

4.4    Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

4.5    Funds to be used to make cash payments under the Plan shall derive from the operation of the Debtor's Chiropractic business and rental income from remaining rental properties not surrendered.

4.6    Plan payments shall commence the first day of the calendar month after

11

confirmation of the plan. (Example: The plan is confirmed on July 20, 2013, the first payment is due August 1, 2013.)

4.7    The months 1 to 3 of the plan, the debtors will pay the administrative claim, from a combination of reserves and current income.

4.8    After payment of the administrative claim in the first three months of the plan, the debtors will pay in months 3 through 60, $4,000.00 on the unsecured claims of Seacoast National Bank and Chase Bank until paid in full.

## ARTICLE V-RETENTION OF JURISDICTION

5.1    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

(a)    To enable Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b)    To enable Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c)    To hear and determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d)    To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date and the allowance of Claims resulting therefrom;

(f)    To hear and determine the validity, extent and priority of all liens, if any, against property of the estate;

(g)    To hear and determine motions seeking a compromise, settlement, release, or abandonment of any contested claim;

12

(h)     To hear and determine all applications for compensation  nd reimbursement and objections to Administrative Claims;

(i)     To hear and determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Effective Date;

(j)     To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(k)     To hear and determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(l)     To enforce any and all injunctions created pursuant to the terms of the plan;

(m)     To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(n)     To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(o)     To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(p)     To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated under the plan;

(q)     To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(r)     To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(s)     To enter a Final Decree pursuant to Bankruptcy Rule 3022.

13

(t)    To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes of the Plan;

(u)    To issue any Order necessary to carry out the Plan.

## ARTICLE VI-EXECUTORY CONTRACTS AND LEASES

6.1    Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed assumed as of the Effective Date

6.2    Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date.  The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease.

6.3    Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

## ARTICLE VII-MODIFICATION OF PLAN

7.1    The Debtor may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with§ 1127(b) or (e).

7.2    After confirmation, the plan may be modified pursuant to § 1127 (e). The payments on the Class B and D claims shall not be deemed payments under the Plan for purposes of § 1127(e).

## ARTICLE VIII-DISCHARGE AND CLOSING

8.1    Upon completion of transfers of real property to Class 3, Class 4, Class 5, and Class 6,  the Debtor shall be entitled to a discharge of and from all those debts, dischargeable under § 1141(d) of the Code.

8.2    Upon completion of transfers of real property and completion all payments

14

due to Class 7, the Debtor shall be entitled to a discharge of all those debts, dischargeable under § 1141(d) of the Code.

8.3     Upon completion all payments due to Class 8 under the terms of the agreement between the debtor and General Insurance, the Debtor shall be entitled to a satisfaction of that debt from General Insurance.

8.4     Upon completion all payments due to Class 9, the Debtor shall be entitled to a discharge of that debt, dischargeable under § 1141(d) of the Code.

8.5     Upon substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge.

## ARTICLE  IX-MISCELLANEOUS

9.1     No creditor may take any collection action against Debtor or property of the estate or of the Debtor so long as Debtor is not in Material Default in performing his obligations to such creditor under the Plan.

9.2     On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

9.3     Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.

9.4     Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non- Bankruptcy law.

15

   s/   John J. Anastasio_____

John J. Anastasio, Esq.

3601 South East Ocean Boulevard, Suite 203

Stuart, Florida 34996

Florida Bar #0722367

Phone:      (772) 286-3336

Email:       eService@psllaw.net

Attorney for the debtors

Kenel Cazeau and Bernadette Cazeau

16