

**ORDERED in the Southern District of Florida on October 7, 2013.**

John K. Olson, Judge
United States Bankruptcy Court

---

# United State Bankruptcy Court
# Southern District of Florida

In re:  **KENEL CAZEAU and**       **Case Number:**       **11-31153-JKO**

**BERNADETTE CAZEAU**              **Chapter 11**

_____/

## ORDER CONFIRMING THE DEBTORS' THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION (Doc 339)

This case came before the court on August 27, 2013, for a Chapter 11 Confirmation Hearing, which hearing was continued and heard on October 1, 2013 (the "Confirmation Hearing") to consider the approval of the Debtors' Third Amended Chapter 11 Plan of Reorganization.  ("Plan") [Doc 339]

**1.      Plan of Reorganization Considered**

Kenel Cazeau and Beredette Cazeau, as debtors and debtors in possession ("Debtors"), proposed and filed with the United States Bankruptcy Court for the

**1**

Southern District of Florida, Fort Lauderdale Division ("Court") the Debtors' Chapter 11 Plan of Reorganization, dated September 18, 2012 (the "Original Plan") [Doc 172 ], as amended on August 26, 2013 (the "Second Amended Plan") [Doc 328 ] , and finally amended on September 30, 2013 ( "Third Amended Plan") [Doc 339] ,before  the continued Confirmation Hearing, collectively the "Plan."

2.    **Approval of Disclosure Statement**

On June 27, 2013, the Court entered an order (i) approving disclosure statement; (ii) setting hearing on confirmation of plan; (iii) setting hearing on fee applications; (iv) setting various deadlines; and (v) describing plan proponent's obligations (the "Scheduling Order") [Doc 296], which, among other things, scheduled a hearing on confirmation of the Debtor's Plan, including timely filed objections to confirmation, (together, the "Confirmation Hearing").

3.    **Notice to Creditors and Interested Parties**

Due notice of the Confirmation Hearing has been given to holders of claims against the Debtor and other parties in interest in compliance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Scheduling Order, as established by the certificates of service, mailing, and/or publication filed with the Court; and such notice is sufficient under the circumstances and no further notice is required.

4.    **Chapter 11 Ballots Filed**

Pursuant to the order (i) approving disclosure statement; (ii) setting hearing on confirmation of plan; (iii) setting hearing on fee applications; (iv) setting various deadlines; and (v) describing plan proponent's obligations (the "Scheduling Order") [Doc 296]; appropriate ballots for voting on the Plan (the "Ballots") having been duly transmitted to holders of claims in compliance with applicable law. [Doc 300]  Each ballot filed voted to confirm the plan, as reflected by the ballot tabulation contained in the certificate of proponent of plan on plan, report on amount to be deposited, certificate of amount deposited and payment of fees.  [Doc 326, Exhibits A and B.]

4.    **Objections to Plan**

Before the confirmation hearing on October 1, 2013, all objections to the plan were withdrawn, except for the objections by creditors MidFirst Bank [Doc 185, 186, 197, 198, 240, 241, 319] and Seterus [Doc 288].  At the confirmation hearing MidFirst Bank withdrew its all objections to the plan, and later that day filed a withdrawal of all its objections.  [Doc 341]  Creditor Seterus, who appeared at the August 27, 2013 confirmation hearing date, and who was duly noticed of the October 1, 2013 continued confirmation date, did not appear at the October 1, 2013 confirmation hearing to prosecute its objection and the objection is deemed waived.

**5.    Third Amended Plan**

As represented by counsel for the debtors at the confirmation hearing,  the amendments to the third amended plan [Doc 339] consisted of: 1) paying administrative claims over the first three months, rather than over the first two months; 2) moved the payment of the post-petition arrearage claim of MidFirst Bank from payment in the third month to payment in the fourth month and set a cap on that amount of $3,700.00;  and 3) attached as an appendix to the plan, a payout schedule in table form.  Based upon the foregoing amendments, MidFirst Bank withdrew its objections.

**6.    Confirmation Hearing**

At the confirmation hearing, the Court considered of the entire record of this chapter 11 case, arguments of counsel, and the debtors' counsel proffer concerning the elements of 11 U.S.,C. § 1129(a).

NOW, THEREFORE, based upon and the evidence adduced at the Confirmation Hearing; and the Court having found and determined that the Third Amended Plan should be confirmed as reflected by the Court's ruling at the Confirmation Hearing; and after due deliberation and  sufficient cause appearing, the  Court finds, determines, and concludes that:

**4**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.    Findings and Conclusions**.    The findings and conclusions set forth and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))**. The Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is a plan proponent in accordance with section 1121(a) of the Bankruptcy Code.

**C.    Chapter 11 Petition**.    On July 28, 2011 (the "Commencement Date"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  [Doc 1]  The Debtor is authorized to continue to operate its business and manage its properties  as  debtor  in  possession  pursuant  to Sections

**5**

1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.

**D.    Judicial Notice.**   The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

**E.    Burden of Proof.** The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met such burden.

**F.    Adequacy of Disclosure Statement**. The Second Amended Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein and thereby, and is approved.

**G.    Solicitation**.        1.        On July 18, 2013, the Plan and Ballots, and notice of the Confirmation Hearing were transmitted and served in compliance with the Bankruptcy Rules and the Local Rules.  [Doc 299, 300]  The Ballots adequately addressed the particular needs of this Chapter 11 Case and were appropriate for holders of claims in Class 1, 3, 4, 5, 6, 7 and 9.  Those Classes of claims and

**6**

interests entitled to vote to accept or reject the Plan. The period during which the Debtor solicited acceptances to the Plan was reasonable in the circumstances of this Chapter 11 Case and enabled holders to make an informed decision to accept or reject the Plan. As evidenced by the certificate of service of the Plan, ballots, and notice. [Doc 299, 300]

2.      The order (i) approving disclosure statement; (ii) setting hearing on confirmation of plan; (iii) setting hearing on fee applications; (iv) setting various deadlines; and (v) describing plan proponent's obligations (the "Scheduling Order") [Doc 296], which gave notice of the applicable deadlines and the confirmation hearing (all of the foregoing, the "Solicitation") was timely, adequate, and sufficient under the circumstances.

3.      The Solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws, and regulations.

4.      In connection therewith, the Debtor, and their affiliates, members, managers, shareholders, partners, employees, attorneys and advisors are entitled to the protection of section 1125(e) of the Bankruptcy Code.

**H.    Notice**.      As is evidenced by the Certificates of Service , the service of the Plan,  Ballots, and order setting the confirmation hearing and continued

**7**

confirmation hearing was adequate and sufficient under the circumstances. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and such parties have had an opportunity to appear and be heard. No other or further notice is required.

**I.      Voting.**      As evidenced by the Debtor's Ballot Tabulation, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida ("Local Rules"),and applicable nonbankruptcy law.

**J.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor as the proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**(a)      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**      In addition to Administrative Expense Claims, which do not need to be classified. Article II of

**8**

the Plan classifies nine classes of claims. The claims placed in each class are substantially similar to other claims. Valid business, factual, and legal reasons exist for separately classifying the various classes of claims and equity interests created under the Plan and such classes do not unfairly discriminate between holders of claims and equity interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**(b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**      Article II of the plan designates Class 2, 8 and 9 as unimpaired, within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

**(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article II of the Plan designates Classes 1, 3, 4, 5, 6, and 7 as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

**(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).**      The Plan provides for the same treatment by the Debtor for each claim in each respective class unless the holder of a particular claim has agreed to a less favorable treatment of such claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

**(e)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan provides

**9**

adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

**(f)     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))**.     Not applicable.  This is an individual Chapter 11 case.

**(g)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))**.     .
Not applicable.  This is an individual Chapter 11 case.

(h)     **Impairment/Unimpairment of Classes of   Claims and Equity Interests (11 U.S.C. § 1123(b)(1))**.     As permitted by section 1123(b)(1) of the Bankruptcy Code, Section 4.01 of the Plan designates Classes , 3, 4, 5, 6, and 7 as impaired.

**(i)     Assumption and Rejection (11 U.S.C. § 1123(b)(2))**.     Article   VI of the Plan govern the assumption and rejection of executory contracts and unexpired leases and meet the requirements of section 365(b) of the Bankruptcy Code.

**(j)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6))**.     Each of the provisions of the Plan is appropriate and consistent with the applicable provisions of the Bankruptcy Code.

**(k)     Cure of Defaults (11 U.S.C. § 1123(d))**.     Article VI of the Plan provides for the assumption of certain executory contracts and unexpired leases.   Article II, provides for the cure of a post-petition arrearage in Class 2.  The Debtor has agreed

**10**

to cure any outstanding defaults promptly and has satisfied its obligation to provide adequate assurance of future performance as to all assumed contracts, by the fourth month of the plan..   Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**K.    The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**    The Debtor has complied with the applicable provisions of the Bankruptcy Code. Specifically:

1.    The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.

2.    The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

3.    The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the Amended Plan, the Second Amended Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

**L.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**    The Plan has been proposed in good faith and not by any means forbidden by law, thereby

**11**

satisfying section 1129(a)(3) of the Bankruptcy Code. Such good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement filed and served, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's estate.  The Plan was developed and negotiated in good faith and at arms'-length among representatives of the Debtor and the creditors.

**M.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, satisfying Section 1129(a)(4) of the Bankruptcy Code.

**N.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**     The     Plan provides the information required by 11 U.S.C. §1129(a)(5) of the Bankruptcy Code.

**O.     No Rate Changes (11 U.S.C. § 1129(a)(6)).**     Section 1129(a)(6) of the Bankruptcy Code is not applicable to this Chapter 11 Case.

**P.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).**     The     Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis

**12**

provided in the Second Amended Disclosure Statement and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired claim either has accepted the Plan or will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

**Q.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**    Classes 4, 5, 6 and 7 voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtor. No Class 11 voted to reject the Plan.

**R.    Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).**    The treatment of Allowed Administrative Expense Claims pursuant to Article III of the Plan, consisting of the debtors' attorney fees, satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 3.02 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

**S.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**    Holders of impaired claims in Classes 4, 5, 6 and 7 voted to accept the Plan, satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

**13**

**T.      Feasibility (11 U.S.C. § 1129(a)(11)).**                  The information in the Amended Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**U.      Payment of Fees (11 U.S.C. § 1129(a)(12)).**      Article     of  the  Plan provides that (i) all fees required to be paid pursuant to section 1930(a)(6) of title 28 of the United States Code will accrue and be timely paid until the Chapter 11 Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code, and (ii) any fees owed to the United States Trustee on or before the Effective Date of the Plan shall be paid on the Effective Date, satisfying section 1129(a)(12) of the Bankruptcy Code.

**V.      Continuation  of  Retiree  Benefits  (11  U.S.C  § 1129(a)(13)).**

Section 1129(a)(13) of the Bankruptcy Code is not applicable to this Chapter 11 Case.

**W.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).**

Section 1129(a)(14) of the Bankruptcy Code is not applicable to this Chapter 11 Case.

**X.      Debtors are Individuals (11 U.S.C.  § 1129(a)(15)).**      (A)   The    value, as of the effective date of the plan, of the property to be distributed under the plan

**14**

on account of such claim is not less than the amount of such claim; or (B)

Tthe value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) [11 USCS § 1325(b)(2)]) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

**Y.    No Applicable Nonbankruptcy          Law    Regarding    Transfers (11 U.S.C. § 1129(a)(16))**.     The Debtors are individuals, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

**Z.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).**

No Class voted to reject the Plan.  Classes 1, 3 and 9 failed to vote.  Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to all Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.

**AA.  Principal Purpose of the Plan (11 U.S.C.  § 1129(d)).**          The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Plan on any such grounds.  Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**15**

**BB. Modifications to the Original Plan**.    The modifications to the Amended Plan do not adversely change the treatment of any other claims or equity interests. Accordingly, pursuant to Bankruptcy Rule 3019(a), these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code), and no further solicitation or voting is required.

**CC.   Good Faith Solicitation (11 U.S.C. § 1125(e)).**    Based on the record of the Chapter 11 Case, the Debtor and their respective agents, successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, to the extent applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**DD. Implementation.**    All documents necessary to implement the Plan and all other relevant and necessary documents have been developed and negotiated in good faith and at arms'-length and shall, upon completion of documentation and

**16**

execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    **Findings of Fact and Conclusions of Law**.    The above-referenced recitals, findings of fact and conclusions of law are incorporated by reference as though fully set forth at length.

2.    **Notice of the Confirmation Hearing**.    Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Scheduling Order, Bankruptcy Code, the Bankruptcy Rules, the Local Rules.

3.    **Amendments to Original Plan.**    The modifications and amendments to the Original Plan meet the requirements of sections 1127(a) and (c), such modifications do not adversely affect the treatment of the claim of any creditor or equity security holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.

4.    **Solicitation.**    The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

**17**

5.    **The Disclosure Statement**.    The Second Amended Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein and thereby, and is approved.

6.    **Motion for Cramdown**.    Not applicable.   No motion for a Cramdown was needed or filed.

7.    **Confirmation of the Plan**.    The Plan and each of its provisions shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code.    The terms of the Plan attached as Exhibit A to this order, are incorporated by reference into, and are an integral part of, this Confirmation Order.

8.    **Objections Resolved or Overruled.**    Except as provided on the record of the Confirmation Hearing, all objections, responses to, and statements and comments, if any, in opposition to, the Plan, other than those adjudicated, withdrawn, waived, or settled prior to, or on the record at, the Confirmation Hearing are overruled in their entirety.

9.    **General Authorizations.**    No additional authorization by this court shall be required,  to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan.

**18**

10.    **Binding Effect**.    On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtor, all holders of claims and equity interests of the Debtor (irrespective of whether such claims or equity interests are impaired under the Plan or whether the holders of such claims or equity interests have accepted the Plan), any and all non-debtor parties to executory contracts and unexpired leases with the Debtor, any other party in interest in the Chapter 11 Case, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

11.    **Implementation of the Plan**.    The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.

12.    **Treatment of Claims and Equity Interests in Impaired Classes**.

All claims in Classes 1 through 9 shall be treated in accordance with Article II of the Third Amended Plan.  [Doc 339], attached as Exhibit A to this order.

13.    **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code, the assumption of the executory contracts and unexpired leases described in the Amended Plan are approved as of the Effective Date.  The rejection of all other executory contracts and unexpired leases is approved as of the Effective Date.

**19**

14.     **Payment of Statutory Fees**.    All fees required to be paid by section 1930 of title 28 of the United States Code shall accrue and be timely paid until the Chapter 11 Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any fees owed to the United States Trustee on or before the Effective Date shall be paid on the Effective Date.

15.     **Retention of Jurisdiction.**                Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to Section 8.02 of the Plan and sections 105 and 1142 of the Bankruptcy Code, until the Chapter 11 Case has been fully and finally dismissed, this Court shall retain the fullest and most extensive jurisdiction over the Chapter 11 Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

16.     **Exemption from Certain Taxes.**                Pursuant to section 1146(c) of the Bankruptcy Code, the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan will not be subject to any stamp tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax.

17.     **Modifications**.     The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code, or as otherwise permitted by law without additional disclosure pursuant to section

**20**

1125 of the Bankruptcy Code.

18.    **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida shall govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan and the Agreement.

19.    **Applicable Nonbankruptcy Law**.    Pursuant  to  section  1123(a)  and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

20.    **Documents and Instruments.**        Each  federal,  state,  commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

21.    **Governmental Approvals Not Required**.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Second Amended Disclosure

**21**

Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Second Amended Disclosure Statement.

22. **Waiver of Stay.** The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for ten (10) days or otherwise, is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

23. **Inconsistency**. To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

24. **No Waiver.** The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

### 

**22**

Submitted by:


John J. Anastasio, Esq.
Suite 203
3601 South East Ocean Boulevard
Stuart, Florida 34996
(772) 286-3336
Florida Bar #0722367
Attorney for the debtors
Kenel Cazeau and Bernedette Cazeau
EMAIL:      john@psllaw.net




The party submitting this order shall serve a copy of the signed order on all parties
service list below and file with the court a certificate of service conforming to
Local Rule 2002-1(F).

**SERVICE LIST**

Jerrold J Golson on behalf of Creditor Fifth Third Bank
j golson@ffapllc.com,
rjohansen@ffap llc.com ;gdeangelo@ffapll c.com;thefflinger@ffapllc .com
Proof of Claim number 1.

Eyal Berger, Esq. on behalf of Creditor Seacoast National Bank f/k/a First National
Bank & Trust of The Treasure Coast
eyal.berger@akerman.com,          j eanette.martinez@akerman.com

Catherine E Douglas on behalf of Creditor Seacoast National Bank f/k/a First
National Bank & Trust of The Treasure Coast
catherine .douglas@akerman.com,  j eanette.martinez@akerman.com
Proof of Claims numbers 2 and 3.

Larry M Foyle, Esq on behalf of Creditor MidFirst Bank
bankruptcynotices@kasslaw .com

Nicole M Mariani on behalf of Creditor MidFirst Bank
bank.ruptcynotices@kasslaw.com
Proof of Claims number 4 and 5

Jerrold J Golson on behalf of Creditor Bank of America, N.A.
j golson@ffapllc.com,
rjohansen@ffap llc.com;gdeangelo@ffap llc.com;thefflinger@ffap llc.com

Proof of Claim number 8

Amber M Kourofsky on behalf of Creditor WELLS FARGO BANK, N.A., AS
TRUSTEE FOR THE HOLDERS OF THE MORGAN STANLEY ABS
CAPTIAL INC. TRUST 2005-WMC2, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-WMC2

24

bkfl@albertellilaw.com,
akourofsky@logs.com;el  ectronicbankruptcynotices@logs.com


Andrew L Fivecoat, Esq. on behalf of Creditor WELLS FARGO BANK, N.A., AS
TRUSTEE FOR THE HOLDERS OF THE MORGAN STANLEY ABS
CAPTIAL INC. TRUST 2005-WMC2, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-WMC2
BKFL @albertellilaw.com
Proof of Claim number 9 (Withdrawn)

Robert F. Elgidely, Esq. on behalf of Creditor Direct General Insurance Company
relgidely          @gjb-law.com,                sanderson(a)gjb-law.com;ekelly@gjb-
law.com;chopkins @gjb-law.com;vlambdin @gjb-law.com
Proof of Clams number 10.

Marta Suarez-Murias on behalf of Creditor Wauchula State Bank
msuarez-murias@blesmlaw.com,    sweser@blesmlaw.com
Proof of Clams number 11.

Amber M Kourofsky on behalf of Creditor Deutsche Bank National Trust
Company
b kfl @a l bertellilaw. com,
akourofsky@logs.com;electronicbankruptcynotices@logs.com


Proof of Claim (Unfiled)

Office of the US Trustee
USTPRegion21.MM.ECF  @usdoj.gov

Zana Michelle Scarlett on behalf of U.S. Trustee Office of the US Trustee Zana.M.
Scarlett@usdoj.gov

# EXHIBIT A

## THIRD AMENDED CHAPTER 11 PLAN

# United State Bankruptcy Court
# Southern District of Florida

In re: **KENEL CAZEAU and**
**BERNADETTE CAZEAU**

**Case Number:**    **11-31153-JKO**
**Chapter 11**

**Debtors.**

_____/

# DEBTORS' THIRD AMENDED CHAPTER 11 PLAN

# September 30, 2013

John J. Anastasio, Esq.
Suite 203
3601 South East Ocean Boulevard
Stuart, Florida 34996
Florida Bar #0722367
Attorney for the debtors
Phone:        (772) 286-3336
Facsimile:    (772) 286-1036
Email:        john@psllaw.net

# INTRODUCTION

Kenel Cazeau and Bernadette Cazeau ("Debtors"), Debtor-in-Possession, through the submit to their creditors, as proponent, this Plan of Reorganization (the "Plan") pursuant to Section 1121. *et seq..* of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

# ARTICLE I-DEFINITIONS

1.1    "Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2    "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.3    "Allowed Claim" means a Claim against the Debtor(s) (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include un-matured or post-petition interest unless otherwise stated in the Plan.

1.4    "Assets" means all property, real or personal, in which the Debtor(s) as/have an interest.

1.5    "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1

1.6     "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7     "Bankruptcy Code" means Title 11 of the United States Code.

1.8     "Bankruptcy Court" means the United States Bankruptcy Court for the the Southern District of Florida, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9     "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.10    "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor.

1.11    "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Florida are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12    "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court for the Southern District of Florida, and bearing Case No. 11-31153.

1.13    "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14    "Claim" means a claim as defined in § 101(5) of the Code.

1.15    "Claimant" means a Person holding a Claim against the Debtor(s).

1.16    "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17    "Collateral" means any property or interest in property of the Debtor(s)

2

subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18    "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19    "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20    "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

1.21    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.22    "Creditor" means the holder of a Claim.

1.23    "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24    "Debtor" means Kenel Cazeau or Benedette Cazeau.

1.25    "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26    "Disputed Claim" means a Claim:

        (a)    which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or which is listed as disputed under any provision of this Plan, or

        (b)    as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27    "Effective Date" means the first Business Day after the Confirmation Order becomes a Final Order.

1.28    "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related

thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29    "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30    "Estate" means the bankruptcy estate(s) of the Debtor. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31    "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor(s) was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32    "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33    "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34    "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35    "Lien" has the meaning set forth in §101(37) of the Code.

1.36    A "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain

4

from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.37    "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.38    "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.39    "Petition Date" means July 28, 2011, the date on which the voluntary petition for relief under Chapter 11 of the Code was filed by the Debtor.

1.40    "Plan" means this Plan, as it may be amended from time to time.

1.41    "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.42    "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.43    "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.44    "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.45    "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.46    "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.47    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments

5

thereto.

1.48    "Secured Claim" means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506 (a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor (s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.49    "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.50    "Liquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.51    "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II-CLASSIFICATION OF CLAIMS AND INTERESTS

**Class 1        Allowed Secured Claim of Fifth Third Bank on
                 <u>Retained</u> Debtors' Residence**

Class 1 consists of the allowed secured claim of Fifth Third Bank's mortgage on Debtor's residence in the amount of $950,153.10. This is a 30-year adjustable rate mortgage. The principal, term, and interest rate of the mortgage shall remain unmodified. This is a non-modifiable mortgage on a primary residence. The loan has been current. The property is 100% secured. There is no unsecured claim.

Property location:        1)   **1124 NW 116th Avenue              (Claim #1)
                               Plantation, Florida**

**Class 2        Allowed Secured Claim of MidFirst Bank on
                 <u>Retained</u> Rental Property**

6

Class 2 consists of the allowed secured claim on the two retained rental properties in Asbury Park, New Jersey with MidFirst Bank. The principal, interest and term of the mortgage shall remain unmodified. The loan is current. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is not impaired**. The properties are 100% secured. There are no unsecured claims.

MidFirst Bank shall retain the existing mortgage lien on the property until the loan is paid in full.

The MidFirst Bank mortgage does not include an escrow for taxes and insurance in its monthly payment. The Debtors will continue to be responsible for the direct payment of taxes and insurance on the property.

The debtors shall cure any post-petition payments due within three months of written notice of the amount, if any.

| Property locations: | 1) | **1116 Asbury Avenue** | **(Claim # 4)** |
| | | **Asbury Park, New Jersey** | |
| | 2) | **1118 Asbury Avenue** | **(Claim # 5)** |
| | | **Asbury Park, New Jersey** | |

There is a post-petition arrearage through August 2013 totaling on both properties $3,700.00. This amount shall be paid in the fourth month of the plan.

**Class 3      Allowed Secured Claim of Bank of America on
              <u>Retained</u> Rental Property**

Class 3 consists of the allowed secured claim on the retained rental property in Davie, Florida with Bank of America. The principal, term, and current interest of the mortgage shall remain unmodified. The only change under the plan is that the current adjustable interest rate of 3.13% shall remain fixed throughout the remaining life of the loan.. Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**. The property is 100% secured. There is no unsecured claim.

| Property location: | 1) | **230 South Pine Island Road** | **(Claim # 8)** |
| | | **Davie, Florida** | |

7

**Class 4**    **Allowed Secured Claim of Wells Fargo Bank on**
**<u>Surrendered</u> Rental Property**

      Class 4 consists of the allowed secured claim on the retained rental property in Cooper City, Florida with Wells Fargo Bank.  This property shall be surrendered in full satisfaction of the mortgage.  This proof of claim was **withdrawn** in exchange for surrender under an agreed order.  [Doc 255]  Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**.  The value was by way of an agreed order.  [DE 255].  There is no unsecured claim.

| Property location: | 1) | **8950 NW 38th Street** | **(Claim # 9)** |
|---|---|---|---|
| | | **Cooper City, Florida** | |

**Class 5**    **Allowed Unfiled Secured Claim of Deutche Bank, Trustee**
**(formerly Bank of America) on**
**<u>Surrendered</u> Rental Property**

      Class 5 consists of the unfiled secured claim on the rental property in Eatontown, New Jersey with Deutche Bank (formerly  Bank of America.   This property shall be surrendered, in full satisfaction of the mortgage.  The value was by way of an agreed order.  [DE 260].  Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**. There is no unsecured claim.

| Property location: | 1) | **9 Carmel Way** | **(Unfiled claim)** |
|---|---|---|---|
| | | **Eatontown, New Jersey** | |

**Class 6**    **Allowed Secured Claim of Wauchula State Bank on**
**<u>Surrendered</u> Vacant Property**

      Class 6 consists of the over secured claim on the vacant land in Fort Pierce, Florida.  An agreed order establishing the value at $135,590.00  was entered.  This exceeds the claim value of $131,045.97.  Debtors will surrender the property to the lender in full satisfaction of this claim.  The value was by way of an agreed order. [DE 264].  Because under 11 U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value of the rights is enhanced, **this class is impaired**..

| Property location: | 1) | **Bluefield Dairy Road** | **(Claim # 11)** |
|---|---|---|---|
| | | **Fort Pierce, Florida** | |

8

**Class 7**      **Allowed Unsecured Claim of Seacoast National Bank on
<u>Surrendered</u> Property**

     Class 7 consists of the allowed unsecured claim on the surrendered vacant
land parcels in Port Saint Lucie, Florida with Seacoast National Bank  Any claim
excess of the secured claim in class 7 shall be an unsecured claim, paid on the
balance of the principal after subtracting the market value, over the 60 month life
of the plan as a class 7 claim, at a rate of $3,000.00 per month.  Because under 11
U.S.C. § 1124, any alteration of the rights constitutes impairment even if the value
of the rights is enhanced**, this class is impaired.**

Property location:       1)       **128 S.W Hawthorne Circle**       **(Claim # 2)**
                                      **Port Saint Lucie, Florida**

                           2)       **Schumann Road**       **(Claim # 3)**
                                      **Port Saint Lucie, Florida**

**Class 8**      **Allowed Unsecured Claim of General Insurance on
Settlement Agreement**

     Class 8 consists of the allowed unsecured claim of General Insurance.  The
settlement agreement provides for monthly payment of $1,111.00 per month paid
on the claim.  This claim involved a counterclaim in connection with provider
personal injury protection claims brought by the debtor, which was settled due to
the costs of continuing the litigation.  The debtor under the Plan has and shall
continue to pay in full according to this agreement.  Pursuant to 11 U.S.C. §
1129(15), this claim shall be paid not less than the amount stated of the filed Claim
# 10 in the amount of $201, 483.56.  This claim is non-dischargeable under an
order and agreement between the parties.  This class is not impaired.

                                                           **(Claim# 10)**

**Class 9**      **Unsecured Claim of Chase Bank**

     This claim for pre-petition credit card charges and shall be paid over the 60-
month life of the plan.  Pursuant to 11 U.S.C. § 1129(15), this claim shall be paid
not less than the amount stated of the filed Claim # 6 in the amount of $1,252.60.

                                                      **(Claim # 6)**

9

## ARTICLE III-TREATMENT OF CLAIMS AND INTERESTS

3.1     Administrative Expenses (Unclassified): Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

3.2     The total unpaid professional fees as of the date of this Plan are estimated to be $40,000.00.  The Debtor is unaware of any other unpaid administrative expense claims.

3.3     Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the Effective Date, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930{a)(6).

3.4     Priorty Taxes.       The Claim of the IRS has been withdrawn.

3.5     Treatment of filed claims shall be as follows:

| Class | Description | Claim # | Distribution |
|-------|-------------|---------|--------------|
| Class 1 | Allowed Secured Claim of **Fifth Third Bank** | 1 | **Retain** and pay claim ias agreed in the note |
| Class 2 | Allowed Secured Claims of **MidFirst Bank** | 4,5 | **Retain** and pay claims as agreed in notes. |
| Class 3 | Allowed Secured Claim of **Bank of America** | 8 | **Retain** and pay claim in full at 3.13% interest for balance of loan. |
| Class 4 | Allowed Secured Claim of **Wells Fargo Bank** | 9 (Withdrawn) | **Surrender** as full claim satisfaction. |
| Class 5 | Allowed Secured Claim of **Deutche Bank** | 6 | **Surrender** as full claim satisfaction. |
| Class 6 | Allowed Secured Claim of **Wauchula State Bank** | 11 | **Surrender** as full claim satisfaction. |

10

| Class 7 | Allowed Unsecured Claims of **Seacoast National Bank** | 2, 3 | **Surrender** and pay $3,000.00 monthly over 60-month life of plan (Months 3 to 60) |
| Class 8 | Allowed Unsecured Claim of **General Insurance** | 10 | Pay claim in full at $1,100.00 per month. |
| Class 9 | Unsecured Claim of **Chase Bank** | 6 | Pay $21.60 per month over 60-month life of plan (Months 3 to 60). |

3.6    All other claims above are made at the present contract terms except for Class 1.

3.7    Class 1 has the present adjustable rate mortgage interest rate of 3.25% fixed for the life of the loan.

## ARTICLE IV-EXECUTION OF PLAN

4.1    The Debtor shall fund this Plan from income from receivables paid to the debtors' Chiropractic practice, d/b/a Ace Chiropractic, and from rents from real estate.

4.2    The Debtor shall retain the Assets of the estate, not indiucated as surrendered above, and shall pay ordinary living expenses, pay the operating expenses for the real estate, and pay the creditors the amounts set forth in this Plan.

4.3    Consistent with the provisions of this Plan and subject to any releases provided for, the Debtor reserves their right to begin or continue any hearings on objections or adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction.

4.4    Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

4.5    Funds to be used to make cash payments under the Plan shall derive

11

from the operation of the Debtor's Chiropractic business and rental income from remaining rental properties not surrendered.

4.6     Plan payments shall commence the first day of the calendar month after confirmation of the plan. (Example:  If the plan is confirmed on August 27, 2013, the first payment is due September 1, 2013.)

4.7     The months 1 to 2 of the plan, the debtors will pay the administrative claim, from a combination of reserves and current income.

4.8     After payment of the administrative claim in the first two months of the plan, the debtors will pay in months 3 through 60, $3,021.60 per month, pro rata on the unsecured claims of Seacoast National Bank ($3,000.00 per month) and Chase Bank ($21,60 per month).

## ARTICLE V-RETENTION OF JURISDICTION

5.1     Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

(a)     To enable Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b)     To enable Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c)     To hear and determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d)     To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date and the allowance of Claims resulting therefrom;

(f)     To hear and determine the validity, extent and priority of all liens, if any,

12

against property of the estate;

(g)    To hear and determine motions seeking a compromise, settlement, release, or abandonment of any contested claim;

(h)    To hear and determine all applications for compensation nd reimbursement and objections to Administrative Claims;

(i)    To hear and determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Effective Date;

(j)    To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(k)    To hear and determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(l)    To enforce any and all injunctions created pursuant to the terms of the plan;

(m)    To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(n)    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(o)    To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(p)    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated under the plan;

(q)    To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(r)    To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the

13

consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(s)    To enter a Final Decree pursuant to Bankruptcy Rule 3022.

(t)    To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes of the Plan;

(u)    To issue any Order necessary to carry out the Plan.

## ARTICLE VI-EXECUTORY CONTRACTS AND LEASES

6.1    Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed assumed as of the Effective Date

6.2    Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease.

6.3    Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate, Assets, or properties. All Rejection Claims shall be General Unsecured Claims.

## ARTICLE VII-MODIFICATION OF PLAN

7.1    The Debtor may submit modifications to the Plan at any time before Confirmation pursuant to § 1127(a) of the Code, and thereafter in accordance with § 1127(b) or (e).

7.2    After confirmation, the plan may be modified pursuant to § 1127 (e). The payments on the Class B and D claims shall not be deemed payments under the Plan for purposes of § 1127(e).

## ARTICLE VIII-DISCHARGE AND CLOSING

14

8.1    Upon completion of transfers of real property to Class 3, Class 4, Class 5, and Class 6, the Debtor shall be entitled to a discharge of and from all those debts, dischargeable under § 1141(d) of the Code.

8.2    Upon completion of transfers of real property and completion all payments due to Class 7, the Debtor shall be entitled to a discharge of all those debts, dischargeable under § 1141(d) of the Code.

8.3    Upon completion all payments due to Class 8 under the terms of the agreement between the debtor and General Insurance, the Debtor shall be entitled to a satisfaction of that debt from General Insurance.

8.4    Upon completion all payments due to Class 9, the Debtor shall be entitled to a discharge of that debt, dischargeable under § 1141(d) of the Code.

8.5    Upon substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge.

## ARTICLE  IX-MISCELLANEOUS

9.1    No creditor may take any collection action against Debtor or property of the estate or of the Debtor so long as Debtor is not in Material Default in performing his obligations to such creditor under the Plan.

9.2    On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

9.3    Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan.

9.4    Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non- Bankruptcy law.

15

**APPENDIX TO PLAN**

**CHAPTER 11 PLAN PAYOUT - COMMENCING OCTOBER 1, 2013.**

(Payments outside of regular monthly payments to creditors)

| Plan Month | Creditor | Classification | Amount |
|---|---|---|---|
| 1 | John J. Anastasio | Administrative | 1/3 of amount to be set |
| 2 | John J. Anastasio | Administrative | 1/3 of amount to be set |
| 3 | John J. Anastasio | Administrative | 1/3 of amount to be set |
| 4 | MidFirst Bank | Secured – post petition arrearage through | 3,700.00 |
| 5 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 6 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 7 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 8 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 9 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 10 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 11 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 12 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 13 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 14 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 15 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 16 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 17 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 18 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |
| 19 | Seacoast National Bank<br>Chase Bank | Unsecured<br>Unsecured | 3,000.00<br>21.60 |

16

| 20 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 21 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 22 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 23 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 24 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 25 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 26 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 27 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 28 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 29 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 30 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 31 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 32 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 33 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 34 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 35 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 36 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 37 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 38 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 39 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 40 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 41 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 42 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |

| 43 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 44 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 45 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 46 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 47 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 48 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 49 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 50 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 51 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 52 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 53 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 54 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 55 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 56 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 57 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 58 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 59 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |
| 60 | Seacoast National Bank | Unsecured | 3,000.00 |
|    | Chase Bank             | Unsecured | 21.60    |

18

   s/   John J. Anastasio_____
John J. Anastasio, Esq.
3601 South East Ocean Boulevard, Suite 203
Stuart, Florida 34996
Florida Bar #0722367
Phone:        (772) 286-3336
Email:          eService@psllaw.net
Attorney for the debtors
Kenel Cazeau and Bernadette Cazeau

19